## Case No. 8,524.

### The LOTTY.

[Olc. 329.] 1

District Court, S. D. New York. April. 1846.

COLLISION — ADMIRALTY JURISDICTION IN SLIP— FAULT OF PILOT— MASTER — VIS MAJOR— MASTER'S KNOWLEDGE OF ENGLISH.

1. Admiralty has jurisdiction in a cause of collision between vessels when the injury is received in a slip where the tide ebbs and flows between piers or wharves in this port.

2. The master of the vessel on board at the time is responsible for the wrongful act of the vessel. although it was consequential to the neglect or misfeasance of a licensed pilot in securing her improperly to a wharf.

[Cited in The China, 7 Wall. (74 U. S.) 70; Homer Ramsdell Transp. Co. v. Compagnie Generale Transatlantique, 63 Fed. 853.]

3. It is an act of neglect and unsafe to leave a vessel in the winter season during the night. at a wharf on the north side of the city, moored with only a single ⅞ inch chain.

4. It is gross and culpable neglect to suffer her to remain in that situation in a high and increasing wind, augmented to a violent gale, in which her fastenings parted.

5. The authority of a licensed pilot in securing a vessel in her berth is not paramount to that of her master; the latter is deemed in full command, and the acts of the pilot are regarded as done with the direction or approval of the master.

[Cited in Camp v. The Marcellus, Case No. 2,-347.]

6. It is not a vis major which excuses a master. that his vessel broke from her fastenings and

1 [Reported by Edward R. Olcott, Esq.]

caused damages to another in a tempest of wind, when he had warning and sufficient opportunity to protect her from that hazard.

[Cited in brief in The Transfer No. 2, 56 Fed. 314.]

7. A foreign master who understands and speaks English imperfectly, will not be charged upon his declarations or admissions in that language, without clear proof that he well understood the meaning of what is addressed to him and that used by him in reply.

The vessel is prosecuted for damages occasioned by her driving, with great violence, against the steamboat Independence, in one of the slips of this harbor. In the afternoon of the 15th of December, 1845, the bark, a Swedish vessel, arrived in this port, and was moored by the pilot, who brought her in, at pier No. 2, North river, on the south side of the wharf. The steamboat lay on the north side of the opposite wharf of the same slip. She was fastened to the wharf fore and aft by a single chain of only ⅞ inch dimension, and it was admitted at the hearing by the counsel of the claimant and respondent, that she was not secured with a strength of fastening required by the usages of the port, in her position at that season of the year, on the north side of the harbor. A gale of wind of extreme violence from the northwest, set in early that evening, and continued through the night, and at 5 o'clock the next morning, when the master and crew were taking measures to carry out more fastenings further to secure the bark, the forward chain parted, and the bark was carried round by the wind, and driven violently stem on against the steamboat, breaking up her wheel-house and doing great damage, before, by the most active exertions of the crews of the two vessels and others aiding, she could be hauled off.

C. Livingston, for libellant.
B. Blunt, for claimant.

BETTS, District Judge. This action has been contested essentially upon two points. The respondents contend, first, that this court has no jurisdiction of cases of collision occurring at the wharves and piers of the city; and secondly, that the master and bark are exonerated from responsibility, the vessel having been placed and left in that condition by a licensed pilot, who navigated her into the harbor and moored her. The collision causing the damage was a maritime trespass, committed upon tide waters, and as such is, upon general principles, within the jurisdiction of the admiralty. [Manro v. Almeida], 10 Wheat. [23 U. S.] 473. It takes cognizance of cases of collision within harbors, and upon rivers, infra corpus comitatus, where the tide ebbs and flows. Bulloch v. The Lamar [Case No. 2,129]. The doctrine has been declared in numerous cases in this court, and I am not aware of any accredited decision in the United States to the contrary; and no distinction is noted in the authorities restricting the jurisdiction over waters in harbors, not flowing into and out of slips, basins, &c. Laws of Oleron, art. 14; Moxon v. The Fanny [Case No. 9,895]; De Lovio v. Boit [Id. 3,776]; Hale v. Washington Ins. Co. [Id. 5,916]; Bulloch v. The Lamar [supra]; Abb. Shipp. 99, note. Canizares v. The Santissima Trinidad [Case No. 2,383]. I shall accordingly pronounce in favor of the jurisdiction in this case.

Upon the second point there is no foundation for the idea that the authority or responsibility of the master or owners of the vessel was any way lessened by the act of the pilot in mooring her. That of the owners would have remained entire had the collision happened when the vessel was under way under the direction of the pilot, although the command of the master and his personal responsibility may, perhaps, be suspended for the time. Abb. Shipp. 161, note; Jac. Sea Laws, 125; Curt. Merch. Seam. 195, 196, notes; [Bussy v. Donaldson] 4 Dall. [4 U. S.] 206; 9 Wend. 1. But after the vessel was brought safely into port, the authority and responsibility of the master were fully reinstated, and the acts of the pilot in selecting her berth and arranging her moorings must be regarded as directed or adopted by the master. By parity of reason his liability should be the same whilst the pilot is navigating the vessel, when he is not compelled by law to take a pilot. Curt. Merch. Seam. 196, note. I think, accordingly, that it is no matter of defence in this case that the bark was moored by the particular orders of the pilot. No law or port regulation has been shown subjecting the master to the authority of the pilot in respect to the position or fastenings of his vessel after she is brought into port, and consequently the master, equally with his owners, is responsible for damages occasioned through ignorance, negligence or want of due precaution in the pilot in this service.

Although, in the course of the hearing, it was conceded on the part of the claimant and respondent, the evidence had established the fact that the fastenings of the bark were insufficient, and not according to the custom of the port, and the court accordingly stopped the libellants giving further proof to that point, yet, on the argument, it was insisted that the damage was caused by vis major, a sudden and extraordinary tempest, which, in addition to the necessary strain and pressure upon the vessel, had raised masses of boards from the dock and driven them against the rigging, thereby forming a bulwark, which exposed her still more to the violence of the gale, and caused her fastenings to give way. It is sufficient avoidance of that branch of the defence that the gale commenced early the preceding evening, and augmented throughout the night in violence; and accordingly the master was warned in due season of the necessity of active precautions in securing his ship. He neglected strengthening her fastenings for

twelve hours, leaving her in almost a hurricane, with only a single and light chain to confine her. Had the disaster occurred in a sudden squall, striking the vessel without premonition, the defence would have a more urgent equity to favor it; but it was palpable negligence to trust his vessel through the night to a tempestuous wind directly straining her off the wharf, where she was held only by a single and slender chain, which the proof shows to have been no more than the slightest fastening used in a like position in calm weather.

The libellants seek also to sustain their action upon the alleged promise of the respondent to pay the damages. The respondent denies making such promise, and also the authority of this court to take cognizance of verbal contracts of indemnity made after a loss or injury had occurred, if indisputably proved. I do not discuss the question of jurisdiction on this point, because, in my opinion, there is no sufficient proof that the respondent made the alleged agreement. He is a foreigner, who speaks English very imperfectly. The promise set up is no more than the impression gathered by the master and some of the crew of the steamer, from his reply to a statement made by the master of the steamboat, at a time of considerable agitation and excitement on both sides. If the declaration was admitted, and the respondent might be regarded acting with reasonable composure at the time, I think the testimony entirely too vague and conjectural to be accepted as proof that he clearly comprehended what had been said to him, or that his reply to it was correctly understood. The decree will be against the vessel for the expenses of repairing the steamboat, no allowance being made for the loss of the trip, and it must be referred to a commissioner to estimate and report the damages pursuant to these directions.